IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TRENA RODGERS                                                                                    PLAINTIFF

v.                                          NO. 3:14-cv-00109 JJV

CAROLYN W. COLVIN, Acting Commissioner                                       DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Trena Rodgers ("Rodgers") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Rodgers maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers several reasons why.[1] She first maintains that her residual functional capacity was not properly assessed. It is her contention that she is unable to perform the work-related activities associated with her past work.

The ALJ is obligated to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ assessed Rodgers' residual functional capacity and found that she is capable of performing light work with some limitations. He then found that she could return to her past work. In so finding, he considered the scant medical evidence. He gave "some weight" to the assessment made by a consultative physician but discounted the portion of the assessment addressing Rodgers' ability to climb, bend, and squat. See Transcript at 13. The ALJ gave "great weight" to the assessments made by two state agency medical consultants. See Transcript at 13. He also considered the non-medical evidence and found that Rodgers' subjective complaints were not fully credible.

Substantial evidence on the record as a whole supports the ALJ's assessment of Rodgers' residual functional capacity. The ALJ adequately considered the relevant evidence, and no prejudicial error was committed in weighing the medical assessments.

The record reflects that Rodgers is sixty-four inches tall and has weighed as much as 240 pounds. See Transcript at 172. Her Body Mass Index is in the obese range. Her excessive weight likely contributes to her other problems, and the ALJ duly noted that likelihood. See Transcript at 13. There is no evidence, though, that his consideration of her weight and its affect on her other impairments was improper.

Rodgers was seen by George Guntharp, D.O., ("Guntharp") on two occasions, the first time for the management of her diabetes, hyperlipidemia, and back pain, see Transcript at 172-176, and the second time for blood work, a refill of her medication, and for problems associated with her arthritis, see Transcript at 178-180. His findings

each time were largely unremarkable, although he did observe evidence of degenerative joint disease in her extremities during the second examination.

In September 2011, Rodgers was seen by Bruce W. Randolph, M.D., ("Randolph") for a consultative physical examination. See Transcript at 183-193. His findings were largely unremarkable. For instance, he observed no restriction in her range of motion. He did note, though, "lumbar muscle tenderness," see Transcript at 185, and found "mild to moderate limitations in lifting, pushing, pulling, bending, climbing, and squatting." See Transcript at 187. In according Randolph's assessment some weight, the ALJ accorded it appropriate weight. The ALJ could and did discount the portion of Randolph's assessment addressing Rodgers' ability to climb, bend, and squat because that limitation was supported by little medical evidence. Save Randolph's observation that Rodgers had tenderness in her lumbar muscle, there is nothing to support his finding of mild to moderate limitations in her ability to climb, bend, and squat.[2] In fact, he noted elsewhere in his assessment that she could squat/arise from a squatting position.

Two state agency medical consultants subsequently reviewed Rodgers' medical records and offered assessments of her physical residual functional capacity. See Transcript at 196-204. The consultants agreed that Rodgers could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, sit with normal breaks for a total of about six

---

[2] Given Rodgers' testimony that she can lift twenty-five pounds, sometimes fifty pounds, see Transcript at 28, the Court confesses some doubt about Randolph's finding of a mild to moderate limitation in her ability to lift, push and pull.

hours in an eight-hour workday, and had an unlimited ability to push and/or pull. In according their assessments great weight, the ALJ accorded the assessments too much weight. See McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011) (opinions of non-examining sources generally given less weight than those of examining sources). His error is not prejudicial, though, as the minimal medical evidence is nevertheless consistent with the assessments. Save the one-time finding by Randolph that Rodgers has lumbar muscle tenderness, there is little medical evidence contrary to the consultants' assessments.

The ALJ also noted the non-medical evidence in assessing Rodgers' residual functional capacity. See Transcript at 12-14. His evaluation of the non-medical evidence was not extensive, but it was adequate and is one of the acceptable evaluations permitted by the record. He noted her daily activities; the dosage, effectiveness, and side effects of her medication; and other factors as required by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). With specific regard to Rodgers' daily activities, the evidence is conflicting. Although she testified she does few household chores and requires the help of her daughter and son-in-law, see Transcript at 26, she also testified that she is capable of lifting twenty-five pounds, sometimes even fifty pounds, see Transcript at 28.

Rodgers maintains that she is incapable of performing the work-related activities associated with her past work. She maintains that she performed her past work as a personal care aide at the medium exertional level, but the ALJ found that she is only capable of performing light work with some limitations.

A claimant is not disabled if she retains the residual functional capacity to perform either: 1) the actual functional demands and job duties of a particular past

relevant job, or 2) the functional demands and job duties of the occupation as "generally required by employers throughout the national economy." See Wagner v. Astrue, 499 F.3d 842, 853 (8th Cir. 2007); Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled."). "The regulations provide that the ALJ may elicit testimony from a vocational expert in evaluating a claimant's capacity to perform past relevant work." See Wagner v. Astrue, 499 F.3d at 853 [citing 20 C.F.R. 404.1560(b)(2)].

Rodgers represents that her past work as a personal care aide required her to frequently lift twenty-five pounds, see Transcript at 130, a representation the Commissioner acknowledges is commensurate with work at the medium exertional level. A vocational expert testified during the administrative hearing, though, that work as a personal care aide is performed at the light exertional level, an answer she represented was consistent with the Dictionary of Occupational Titles ("DOT"). See Transcript at 21-22. At step four of the sequential evaluation process, the ALJ found the following:

> The vocational expert testified that the claimant's past relevant work as a personal care aide was work performed at the light level of exertion, according to the Dictionary of Occupational Titles, number 309.677-010. The claimant is limited to light work with additional exertional limitations, all of which are consistent with the positional requirements of the claimant's past relevant work. Based on the residual functional capacity found herein and the claimant's other vocational factors, the vocational expert testified that the claimant could perform her past relevant work. In comparing the claimant's residual functional capacity with the physical

> and mental demands of this work, the undersigned finds that the claimant
> is able to perform it as actually and generally performed.

See Transcript at 14.

The ALJ could find as he did. Although Rodgers represents that she performed her job as a personal care aide at the medium exertional level, he was not bound by her narrative description of the functional demands and duties of the job; instead, he could and did evaluate the job as it is done in the national economy. See Brinegar v. Barnhart, 358 F.Supp.2d 847, 858 (E.D. Mo. 2005) [citing Lowe v. Apfel, 226 F.3d at 973; Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996)]. He relied upon the vocational expert's testimony and the DOT and properly found the following: the functional demands and duties of a personal care aide as generally required by employers throughout the national economy is commensurate with light work, work Rodgers is capable of performing with some limitations.

Rodgers also maintains that the ALJ posed an incorrect hypothetical question to the vocational expert. Rodgers maintains that the question failed to include her mild to moderate limitations in lifting, pushing, pulling, bending, climbing, and squatting.

At step four of the sequential evaluation process, the ALJ is obligated to determine whether the claimant has the residual functional capacity to perform the demands of her past relevant work. The determination is made by ascertaining the demands of her past relevant work, see Social Security Ruling 82-62, and comparing it with what she is capable of performing, see Sells v. Shalala, 48 F.3d 1044 (8th Cir. 1995).

A vocational expert testified that Rodgers' past work as a personal care aide was

performed at the "light level of exertion." See Transcript at 22. The vocational expert was asked a series of questions about the type of work that could be performed by a hypothetical individual with Rodgers' impairments, the answers to which changed as a sit/stand option was modified. The ALJ found that Rodgers' past work as a personal care expert was performed at the light exertional level, work he found she is capable of performing. The ALJ therefore stopped at step four.

Substantial evidence on the record as a whole supports the ALJ's findings as to the demands of Rodgers' past relevant work as a personal care aide and his comparison of those demands with what she is capable of performing. The vocational expert testified that the work is performed at the light level of exertion, and the ALJ found that the vocational expert's testimony was consistent with the DOT. Rodgers has offered nothing to rebut the vocational expert's testimony nor the ALJ's finding. The ALJ then properly compared the demands of Rodgers' past work with the finding he made regarding her residual functional capacity, the latter finding being supported by substantial evidence on the record as a whole.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Rodgers' complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 28th day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE